

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-12-00611-CR

GEORGE TOM WOOD                                                    APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

----------

### FROM THE 432ND DISTRICT COURT OF TARRANT COUNTY
### TRIAL COURT NO. 1218326D

----------

## MEMORANDUM OPINION[1]

----------

Appellant George Tom Wood appeals from his conviction for official oppression. We affirm.[2]

----------

[1]*See* Tex. R. App. P. 47.4.

[2]This appeal was originally submitted without oral argument on August 15, 2013, before a panel consisting of Justice Gardner, Justice Walker, and Justice Meier. *See* Tex. R. App. P. 39.8; 2nd Tex. App. (Fort Worth) Loc. R. 3B(2). The court, on its own motion on June 10, 2014, ordered this appeal resubmitted

# I. BACKGROUND

## A. ANTLERS DISCOVERED

Anthony Brown was a passionate deer hunter and also habitually looked for antlers that white-tail deer shed during the spring. He would use the shed antlers to "make crafts out of them" and would "collect them." On March 23, 2010 at around noon, Brown drove to a city-owned park in Fort Worth, Texas, on his four-wheeled, all-terrain vehicle (ATV). He took his dog with him. Brown found several shed antlers that day. He tied some of the antlers to the front rack of his ATV but quickly ran out of room. He then started throwing the found antlers, including one large antler, in a brush pile to pick up later and began looking for another large antler to match the already-found large one. Brown found another large antler about an hour later and returned to the brush pile to see if it matched the other large antler.

While Brown was comparing the antlers by the brush pile, he saw a Fort Worth Marshal's truck approaching. Brown was holding the large antlers and set them on the front rack of the ATV. Wood and William Eugene Fox, both deputy marshals, got out of the truck, and Wood asked what Brown was doing. Fox told Brown that it was "illegal to ride a four-wheeler in a park." Brown ordered his

without oral argument on July 1, 2014; assigned the appeal to a new panel, consisting of Justice Walker, Justice Meier, and Justice Gabriel; and assigned the undersigned to author the opinion.

2

dog, who was not on a leash, onto the back rack of the ATV.[3] Brown then saw that Wood had picked up the large antlers. Wood told Brown that it was illegal to pick up antlers on private property[4] and that the "nature center . . . right next door" would want the antlers for further study. Fox and Wood then took Brown's driver's license and the two large antlers and returned to their truck. They then came back to Brown and returned his driver's license; however, they left the large antlers in the truck. Wood and Fox then told Brown that he could not drive the ATV home and that they would not write him a citation for riding the ATV on a public road.

Wood and Fox returned to their truck but Brown followed them to ask if he was going to get his antlers back. Wood told Brown that they were going to keep them because "the game wardens were going to be interested" and "the nature center was going to want to do studies on them." Wood tried to close the passenger door of the truck but Brown blocked the door and again asked for the antlers back. Wood told Brown no. Brown believed Fox "just wanted to get out of there. He was done with this, and he was going to move on." Brown told Fox that Fox would be responsible for this if he "let this happen." Fox told Brown to step away from the door and that "they were doing [Brown] a big favor by letting

---

[3]Wood testified that he was "scared to death of large dogs, strange dogs," that Brown's dog "bound[ed]" toward him, and that he ordered Brown to get his dog. Fox confirmed that Wood "repeatedly" told Brown to "call your dog off."

[4]In fact, it is allowable to take and keep shed antlers found in a city park.

3

[Brown] off." Brown then convinced Wood to take a picture of Brown with the large antlers with Brown's phone. After Wood took a picture of Brown with the antlers, Brown stated that Wood "put his hands out to receive them back." Wood and Fox left with the antlers.

## B. ANTLERS TAKEN TO MARSHAL'S OFFICE

That same day, Fox and Wood, each holding an antler, "excited[ly]" went to Sergeant Mike Martinez's office, who also was with the marshal's office and Fox and Wood's supervisor. Martinez asked them where the antlers had come from, and Fox and Wood told him that they had found them in the city park and that they "had detained a guy out there that was riding an ATV four-wheeler." Martinez averred that Fox and Wood never told him that they had taken the antlers from Brown. Fox and Wood both later testified that Martinez told them they should have collected all the antlers that Brown had picked up. Wood told Martinez that he did not take the other antlers because "they were in [Brown's] possession" and Wood did not want to "get into an argument out there in the field about possession." Wood contended that Fox put the antlers on Martinez's desk but Martinez told Fox to take the antlers home. Fox took the antlers home but stated that he would have them mounted so they "can be used in the classroom when the officers go to the classes." Martinez denied that he told Fox to take the antlers home.

4

## C. REPORT AND INVESTIGATION

The next day, a "visibly upset" Brown reported the incident to Martinez. From Brown's explanation, Martinez determined that Brown was talking about Fox and Wood. Martinez became "nervous" because "this guy is making a complaint of a pretty big nature about two people that . . . worked under my direction, and . . . it was difficult." Brown asked for the antlers to be returned but Martinez stated he had to "consult [his] chain of command."

Lieutenant Jesus Hernandez, the "top dog" for the city marshal's office, conducted an administrative investigation. He determined that Brown's complaint was "valid" and "that there [were] some implications that were criminal as well." Accordingly, Hernandez referred the matter to the Fort Worth Police Department for a criminal investigation. The investigating police officer, Sergeant William Hix, investigated the matter and referred it to a grand jury. Both Wood and Fox were indicted with official oppression for intentionally subjecting Brown to a seizure or dispossession that they knew was unlawful. *See* Tex. Penal Code Ann. § 39.03(a)(1) (West Supp. 2014).

## D. TRIALS

Wood and Fox were tried together but their first trial ended in a mistrial after "prohibited testimony" was presented before the jury. The second joint trial was tried before the trial court. Wood testified Brown never had anything in his hands on March 23. Wood first saw one of the large antlers after Brown called his dog to the back of the ATV and Wood saw that Fox was holding one. Fox

5

told Wood that he had found the antler in the grass, and Wood then saw the other large antler in the grass close to where Fox was standing. Wood picked that antler up and asked Fox to hand him the other large antler, which Fox did. Wood testified that he never removed any antlers from Brown's ATV because they were in Brown's possession. Wood admitted that when Brown asked "about those antlers," he told Brown that he could keep the antlers on the ATV but the two large antlers on the ground would be taken "back to the office." Wood believed that he did not do anything unlawful or wrong when he took the antlers to the marshal's office. Indeed, he believed that the antlers that were on the ground were city property.

The trial court found Wood and Fox guilty of official oppression. Wood and Fox waived a punishment hearing, and the trial court assessed their punishments at ninety days' confinement, probated "pro forma" for one year. Fox appealed and argued that the evidence was insufficient to support his conviction because it failed to establish that Brown was in possession of the antlers and because no evidence indicated that Fox knew taking the antlers from Brown was illegal. This court affirmed the trial court's judgment as to Fox. *Fox v. State*, No. 02-12-00559-CR, 2014 WL 261049, at *3 (Tex. App.—Fort Worth Jan. 23, 2014, pet. ref'd) (mem. op., not designated for publication). Wood likewise appeals and argues that the evidence was insufficient to support his conviction because there was no evidence showing that taking the antlers was unlawful, that Wood knew

6

the taking of the antlers was unlawful, or that Wood could be convicted as a party.

## II. SUFFICIENCY OF THE EVIDENCE

### A. STANDARD OF REVIEW

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Winfrey*, 393 S.W.3d at 771; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

### B. DISCUSSION[5]

#### 1. Unlawful Dispossession

Wood first contends that there is no evidence he committed a dispossession that was unlawful. Possession is defined as "actual care, custody, control, or management." Tex. Penal Code Ann. § 1.07(39) (West Supp. 2014).

---

[5]We pause to note that the State's substantive argument addressing Wood's carefully briefed sufficiency allegations, exclusive of a four-page statement of the applicable standard of review and a recitation of the elements of the offense charged, was two sentences long.

Wood relies on his and Fox's testimonies at trial that Brown was not holding the antlers when they first approached and that Wood found one of the large antlers on the ground. Wood testified that he told Brown he was "terminating the use of the park to him . . . and the antlers that he had on his ATV he could keep, but the antlers that were on the ground, . . . we were going to take the antlers back to the office." Wood averred that Brown never asked for the return of the antlers, never said that he had found the antlers, and never claimed ownership of them. Wood contended that he never saw Brown holding the two large antlers until Wood took the picture of Brown. Although Wood averred that even the antlers on Brown's ATV belonged to the city because they were found on city property, Wood also admitted that he did not take the antlers off the ATV because they were in Brown's possession.

Brown testified that he was holding the antlers when Wood and Fox approached and that he then "set the antlers on the front rack" of his ATV. Additionally, Brown testified that he twice asked Wood to return the antlers, indicating he possessed the antlers. Although Wood disputed Brown's version of events, the trial court was the sole judge of their credibility and has the responsibility to resolve conflicts in the testimony, which we may not second guess. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Blackman v. State*, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). The evidence was sufficient to show that

8

Brown had care, custody, and control—possession—of the antlers and that Wood took the antlers to the truck.

## 2. Knowledge

Wood next contends that there was no evidence that he knew the dispossession was unlawful. Wood testified that he did not take the antlers on the ATV because "they were in [Brown's] possession." Although Wood concluded at the scene that the antlers were the property of the city, he stated that he would not have taken the large antlers if they had been in Brown's possession. Brown testified that the large antlers, indeed, were on his ATV and in his possession. Because Wood would not have taken anything that was in Brown's possession and because Brown testified that the antlers were in his hands and then on the front of his ATV, the evidence supports an inference that Wood knew his dispossession was unlawful. This is true even though Wood testified that Brown was not holding the antlers and that the antlers were on the ground.[6]

## 3. Law of Parties

Wood's final sufficiency argument focuses on the lack of any evidence allowing Wood to be convicted as a party. Because the evidence was sufficient

---

[6]Wood also relies on Martinez's order for Fox to take the antlers home and on Martinez's belief that all the antlers should have been seized to show that Wood did not know the dispossession was unlawful. Again, Martinez denied making these statements, and the trial court was in a position to resolve the conflict.

to show Wood's guilt as a principal, we need not address his guilt as a party. *See Washington v. State*, 417 S.W.3d 713, 723–24 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). Nonetheless, "[a] person is criminally responsible as a party to an offense if the offense is committed by his own conduct." Tex. Penal Code Ann. § 7.01(a) (West 2011). Wood focuses on the fact that there is no evidence showing that he "knew he was doing anything to assist in the commission of an actual crime." As recited above, the evidence is sufficient to show Wood knew he could not take the antlers if they were in Brown's possession. Brown unequivocally testified that he was holding the antlers and put them on his ATV before Wood took them to the marshal's truck even though Brown twice asked for their return. This is more than mere evidence of Wood's presence at the scene and shows his active participation in the dispossession, which satisfies the law of parties. *See Nelson v. State*, 405 S.W.3d 113, 123 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) (recognizing guilt under law of parties established if evidence shows parties were acting together, each contributing some part towards the execution of their common purpose).

### III. CONCLUSION

We overrule Wood's sole issue and affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  WALKER, MEIER and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  August 7, 2014