**Opinion issued November 13, 2025.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-24-00165-CR

———————————

**DEMONTRION TERREIL ALBERT, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 248th District Court**
**Harris County, Texas**
**Trial Court Case No. 1740082**

---

## MEMORANDUM OPINION

After a bench trial,[1] the trial court convicted appellant Demontrion Terreil

Albert of aggravated robbery and sentenced appellant to 70 years' confinement in

---

[1] Appellant waived his right to a jury trial with the consent of the trial court and the State, but the record does not contain a written waiver as required by article 1.13 of the Texas Code of Criminal Procedure. The reporter's record reflects, however,

the Institutional Division of the Texas Department of Criminal Justice. TEX. PEN. CODE § 29.03(a)(1). Appellant timely filed a notice of appeal.

## Background

Because appellant does not challenge the sufficiency of the evidence, only a brief recitation of the facts is necessary.

Appellant and complainant Marcus Jefferson gave conflicting testimony at trial regarding the relevant events. Jefferson owns a vending machine company.[2] According to Jefferson, on February 8, 2021, a friend of Jefferson named Dre called Jefferson to sell four vending machines. Dre and Jefferson agreed to meet at a gas station on the Southwest side of Houston so that Jefferson could inspect the machines. Before meeting Dre at the gas station, Jefferson stopped by the bank and withdrew $14,000, which he concealed in a bank bag. Jefferson proceeded to the gas station, where he waited about 20 minutes for Dre to arrive. Jefferson called Dre, who said that he would meet Jefferson there, and that appellant (the owner of the vending machines and a friend of Dre) would arrive at the gas station in a black Chrysler 300 to help take the machines to a storage facility.

---

that appellant was aware of his right to a jury trial and waived it knowingly. *Hinojosa v. State*, 555 S.W.3d 262, 266 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd).

[2] Jefferson admitted at trial to having a long criminal history, including murder, credit-card abuse, fraud, theft, and drug offenses.

Jefferson testified that appellant arrived in a black Chrysler 300 and parked next to one of the gas pumps. Jefferson told appellant to park his car next to Jefferson's car, and appellant did so, backing into the parking space. Jefferson went to the trunk of his car to get his money bag. Jefferson testified that appellant would not unlock his passenger side door to allow Jefferson to sit in appellant's vehicle so the two could have a conversation. Standing between the two cars, Jefferson told appellant to call Dre. From inside his car, appellant told Jefferson to give him the money bag. Jefferson refused and saw appellant pull out a gun. Appellant shot Jefferson in his right arm and his abdomen. Jefferson drew his firearm and shot back at appellant multiple times. Appellant drove away hastily, colliding with a nearby car before exiting his vehicle and fleeing on foot. Jefferson placed his money bag under the driver seat of his car and sat down in the car. He attempted to call 9-1-1 but testified that, because of his gunshot wounds, he could not make the phone call. Bystanders in the area approached Jefferson's car to render him aid. Emergency Medical Services personnel arrived and transported Jefferson to a hospital.

Initially, Jefferson identified as the shooter people in photo arrays that did not include appellant. Ultimately, when police presented a photo array that included appellant, Jefferson identified appellant as the shooter. Forensic analysis revealed that appellant's fingerprints were on a soda can left in the abandoned

Chrysler 300. At the time of the incident, appellant was equipped with a GPS ankle monitor which also placed appellant at the scene on the date and time of the incident.

Appellant testified that, on the date of the shooting, he met with his friends Dre and "Fuddy." Dre and Fuddy were planning a drug deal. Their plan was to sell Jefferson 12,000 yellow pills, 6,000 of which were fake pills. They also planned to sell Jefferson $2,000 worth of Oxycodone pills. Fuddy and appellant drove to a gas station where Jefferson was waiting for them. Fuddy and appellant watched Jefferson while Jefferson was on a call with Dre. Fuddy and appellant watched as Jefferson then did a drug deal and was robbed. Afterward, Fuddy and appellant drove to another location, where Dre was waiting for them. Fuddy gave appellant the pills intended for Jefferson, instructed appellant to do the drug deal that Dre and Fuddy had planned, and got in the car with Dre. Appellant drove back to the gas station. Jefferson told appellant to park next to Jefferson's car. Appellant watched as Jefferson retrieved something from the trunk, but appellant could not tell what it was. Jefferson tried to get in the car with appellant, but appellant would not let Jefferson enter the vehicle because he did not know what Jefferson was carrying in his hands. Jefferson and appellant spoke through appellant's driver-side window. Appellant gave Jefferson a pill so that Jefferson could test it by dropping it to the ground to see if it broke. Jefferson began expressing his doubts about the

4

drug deal and tried to put his money bag back in his car. Appellant leaned out of the car, grabbed the money bag, and "tried to mash off," but the car was in reverse. Jefferson pulled out his gun and shot twice. Appellant dropped the money bag, picked up a gun, and fired back. Appellant ducked and drove off, crashing into another car on the street. Appellant ran to a nearby parking lot, where Fuddy and Dre picked him up.

At the charge conference, appellant's counsel asked the trial court to consider the lesser-included offense of theft from a person. Initially, appellant's counsel asked the trial court to consider self-defense. Once the trial court questioned whether appellant would be entitled to self-defense, appellant's counsel withdrew his request for consideration of the defense of self-defense. The trial court found appellant guilty of aggravated robbery with a deadly weapon. The trial court sentenced appellant to 70 years' incarceration in the Institutional Division of the Texas Department of Criminal Justice.

## Ineffective Assistance of Counsel

In two issues, appellant complains that he received ineffective assistance of counsel at trial.

### A.    Applicable Law

To prove that trial counsel provided ineffective assistance of counsel, an appellant must show by a preponderance of the evidence that (1) trial counsel's

performance was deficient and (2) that deficiency prejudiced him, meaning that there is a reasonable probability that the result of the proceeding would have been different but for his counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Martinez v. State*, 449 S.W.3d 193, 204 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). Failure to satisfy one prong of the test eliminates a court's need to consider the other prong. *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009).

First, appellant must establish that trial counsel's performance fell below an objective standard of reasonableness. *Martinez*, 449 S.W.3d at 204 (citing *Robertson v. State,* 187 S.W.3d 475, 483 (Tex. Crim. App. 2006)). There is a strong presumption that trial counsel's conduct falls within a wide range of reasonableness and constitutes a "sound trial strategy." *Strickland*, 466 U.S. at 689; *Martinez*, 449 S.W.3d at 204. Unless appellant provides a record that affirmatively demonstrates that counsel's performance was not a product of sound trial strategy, a reviewing court will presume that counsel's performance was constitutionally adequate. *State v. Morales*, 253 S.W.3d 686, 697 (Tex. Crim. App. 2008). However, trial counsel's performance may still fall below an objective standard of reasonableness when no reasonable trial strategy would justify trial counsel's conduct, even when trial counsel's subjective reasoning is adequately reflected in the record. *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005).

Under the second prong of the *Strickland* test, the appellant establishes prejudice by showing that there is a reasonable probability, sufficient to undermine confidence in the outcome, that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland,* 466 U.S. at 687. When the appellant demonstrates that his counsel's errors were so serious that they deprived the appellant of a fair trial, the second prong is satisfied. *Id.*

Although an appellant may claim ineffective assistance of counsel for the first time on direct appeal, the record in such a case often will not be sufficient to overcome the presumption that counsel's conduct was reasonable and professional. *Washington v. State*, 417 S.W.3d 713, 724 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (citing *Cannon v. State*, 252 S.W.3d 342, 349 (Tex. Crim. App. 2008)). In such a case, we will not find deficient performance unless counsel's conduct is so outrageous that no competent attorney would have engaged in it. *Id*. (citing *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)).

**B.**    **Trial Counsel's Understanding of Self-Defense Law**

Appellant claims he "was deprived of effective assistance of counsel when trial counsel presented and argued a confession-and-avoidance defense without being reasonably informed of the law." We disagree.

Trial counsel must have a "firm command of the facts of the case as well as governing law before he can render reasonably effective assistance of counsel." *Ex*

7

*parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990). Appellant cites *Welborn*, in which the accused was being tried as a party to the use of a forged prescription. *Id.* at 394. At trial, counsel in *Welborn* demonstrated confusion as to the application of the law of parties. *Id.* Specifically, trial counsel focused his cross-examination questions on witnesses who had not identified his client as the person using the forged prescription and ignored other direct evidence that his client drove the person using the forged prescription to the pharmacy, thus implicating his client's guilt under the law of parties. *Id.* Despite trial counsel's testimony that he was aware that the accused was being tried as a party, the Texas Court of Criminal Appeals reasoned that the record belied that testimony and demonstrated trial counsel's confusion as to the applicable law. *Id.* After considering other cumulative errors, the court reversed the conviction. *Welborn*, 785 S.W.2d at 396.

This record does not as readily evince trial counsel's confusion as to the applicable law as the record in *Welborn*. At the charge conference, the trial court asked trial counsel what charges he wanted the trial court to consider. Trial counsel first asked for the trial court to consider the state-jail felony of theft from a person. TEX. PENAL CODE § 31.03(e)(4)(B). The trial court agreed to consider it. Next, trial counsel and the trial court had the following exchange about self-defense:

> Trial counsel: Judge, I would also ask the Court to consider self-defense, too. Based on my client's testimony, he

|  |  |
|---|---|
| | was responding to the aggressive behavior of the complainant. |
| Trial court: | So you're saying that after - - when you say "the aggressive behavior" - - |
| Trial counsel: | The complaining witness pulled the gun first. |
| Trial court: | After he stole - - after your client stole - - |
| Trial counsel: | Grabbed. |
| Trial court: | - - grabbed his stuff. |
| Trial counsel: | Right. |
| Trial court: | So the issue then is do you have a right to self-defense when you're the - - |
| Trial counsel: | When you're committing an illegal act. |
| Trial court: | When you're the aggressor, I mean - - |
| Trial counsel: | During the commission of an illegal act. |
| Trial court: | I mean, I did research on it; and I just don't see that you really are - - |
| Trial counsel: | You know, Judge, I am going to withdraw that. Because I just finished a self-defense case and that was - - every time I have a self-defense case, it's always you cannot be committing an illegal act at the same time, so okay. I will withdraw that. |
| Trial court: | Okay. All right. So I will, though, consider theft from a person. |

A defendant is not barred from claiming to have acted in self-defense in the course of illegal conduct, but may not benefit from the presumption of reasonableness

9

while in the course of illegal conduct. TEX. PEN. CODE § 9.32(b)(3). Trial counsel may have over-simplified the lack of a presumption of reasonableness in self-defense cases involving the actor's illegal activity in his remarks to the trial court. Without written or oral testimony from trial counsel we cannot interpret this to mean that trial counsel misunderstood the law of self-defense and made strategic decisions based on ignorance of the law instead of sound reasons. *Hart v. State*, 667 S.W.3d 774, 781 (Tex. Crim. App. 2023) (holding that appellate record was insufficient to overcome strong presumption that trial counsel's decision declining trial court's offer to include sudden-passion instruction in punishment-phase of trial was the result of reasonable strategy, where trial counsel was not afforded an opportunity to explain his actions).

Appellant cites habeas corpus cases addressing how the voluntariness of a defendant's plea was impacted by trial counsel's giving erroneous advice, *Ex parte Moody*, 991 S.W.2d 856, 857-58 (Tex. Crim. App. 1999), and failing to communicate a plea bargain offer, *Ex parte Wilson*, 724 S.W.2d 72, 74-75 (Tex. Crim. App. 1987) (en banc). Because the record on appeal does not reflect any of trial counsel's advice to appellant, we cannot assume that it was erroneous, that it was not an agreed-upon strategy, or that it otherwise affected the voluntariness of any of the appellant's waivers, such as the right to jury trial or the right not to testify.

For these reasons, we cannot say that trial counsel chose his defensive strategy without being reasonably informed of the law.

## C.      Abandoning Self-Defense for a Lesser-Included Offense

Appellant claims that he received ineffective assistance of counsel because trial counsel "convinced the court not to consider the law of self-defense when self-defense was central to [appellant's] sole path to acquittal." We disagree.

In a bench trial, an affirmative defense does not have to be formally "submitted" to the fact finder. *McDavid v. State*, 03-04-00304-CR, 2006 WL 903724 at *3 (Tex. App.—Austin 2006, pet. ref'd) (mem. op., not designated for publication). Trial counsel's performance may be deficient if he fails to request a particular defense. *See Davis v. State*, 278 S.W.3d 346, 352 (Tex. Crim. App. 2009) (holding performance deficient in jury trial in which trial counsel failed to request an accomplice witness jury instruction). Even when the evidence is sufficient to raise a defense, the mere failure to request an affirmative defense to which a client is entitled is not ineffective assistance of counsel. *See Dannhaus v. State*, 928 S.W.2d 81, 85 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) (discussing ineffectiveness for failing to request defensive jury instruction). Instead, the test is whether it was objectively unreasonable for counsel not to ask for it. *Id.* at 85-86 (citing *Strickland*, 466 U.S. at 686).

In *Dannhaus v. State*, we found trial counsel's performance not to be deficient where trial counsel did not request a jury instruction on self-defense, among other instructions, in a murder trial. *Id*. at 87. The appellant in *Dannhaus* testified that at the time of the shooting he was not in fear of his life, was not afraid of the decedent when she attempted to cut him with a kitchen knife, and could have taken the knife away from her, and that the shooting was an accident. *Id*. at 86. We reasoned that, "by this testimony, appellant considerably weakened an assertion of self-defense." *Id*. We further looked at the entirety of trial counsel's strategy, which was apparently to seek a conviction of a lesser offense, and held that his "damage control" strategy was not objectively unreasonable under the circumstances. *Dannhaus*, 928 S.W.2d at 87.

In this case, trial counsel's strategy appeared to focus more on separating appellant's taking Jefferson's bank bag from appellant's shooting at Jefferson with a firearm. Trial counsel requested that the court consider a lesser-included offense of theft from a person, a state-jail felony. TEX. PENAL CODE § 31.03(e)(4)(B). Even with appellant's felony history, a conviction for the state-jail felony would have reduced his punishment range from 25 to 99 years' incarceration[3] to 2 to 20 years' incarceration,[4] a "damage control" strategy similar to the one in *Dannhaus*. Like

---

[3]  TEX. PENAL CODE § 12.42(d).

[4]  *Id*. § 12.425(b).

the appellant in *Dannhaus*, appellant made admissions that weakened any claim of self-defense. As appellant notes in his brief, although his admissions to engaging in the criminal activity of selling drugs and attempting to steal Jefferson's money did not preclude a self-defense claim, they did preclude appellant from benefitting from the presumption of reasonableness. TEX. PEN. CODE § 9.32(b)(3).

Additionally, counsel may have believed that the video of the incident did not support appellant's testimony that he grabbed the bag from Jefferson, reversed the car into a concrete car stop, and then dropped the bag before shooting Jefferson. Specifically, although appellant testified that the video "clearly" shows the bag falling out of the car window and shows appellant "actually throwing it," the video does not clearly show appellant dropping or throwing anything. During cross-examination, the State asked appellant if what he claimed was him holding a bag in the video was actually him holding a gun. Because of this, appellant's counsel may have believed the sounder strategy was to not a press self-defense claim with the court and risk losing credibility but to strive for consideration of the lesser-included offense. *See Roberts v. State*, No. 01-16-00059-CR, 2016 WL 6962308, at *5 (Tex. App.—Houston [1st Dist.] Nov. 29, 2016, pet. ref'd) (mem. op., not designated for publication) ("Appellant's counsel could have reasonably determined that the evidence was weak enough that to include the instruction in the

13

charge could risk credibility with the jury."). Under these circumstances, appellant's trial counsel's apparent decision to seek a lesser-included offense in lieu of a self-defense strategy was not objectively unreasonable. *Dannhaus*, 928 S.W.2d at 87.

On this record, we cannot say that trial counsel's performance was deficient for withdrawing his request for the trial court to consider self-defense. *See Esquivel v. State*, No. 01-16-00301-CR, 2017 WL 3910793, at *7 (Tex. App.—Houston [1st Dist.] Sept. 7, 2017, pet. ref'd) (mem. op., not designated for publication) ("Even if the law permitted counsel to obtain an instruction on self-defense, mistake of fact, or voluntary conduct, the failure to request one of those instructions does not mean counsel was ineffective because defensive issues 'frequently depend upon trial strategy and tactics.'" (quoting *Tolbert v. State*, 306 S.W.3d 776, 779–82 (Tex. Crim. App. 2010))).

## Conclusion

Having found no reversible error, we affirm the judgment of conviction.


Amparo "Amy" Guerra
Justice

Panel Consists of Justices Guerra, Guiney, and Johnson.

Do not publish. TEX. R. APP. P. 47.2(b).

14