**Affirmed as Modified and Memorandum Opinion filed July 19, 2018.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-16-00971-CR

---

### MARVIN RAY AUGUST, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 56th District Court
Galveston County, Texas
Trial Court Cause No. 16-CR-1399**

---

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Marvin Ray August of possession of a controlled substance with intent to deliver and sentenced him to 50 years' confinement. *See* Tex. Health & Safety Code Ann. § 481.102 (Vernon Supp. 2017), § 481.112(a), (c) (Vernon 2017). In three issues, appellant asserts that the jury's "guilty" finding is not supported by legally sufficient evidence and that the trial court erred in ordering appellant to repay his court-appointed attorney fees. We affirm as modified.

BACKGROUND

Appellant resided at a townhome in Texas City with his mother, his 12-year old daughter, and his girlfriend, Brandy Saenz.

In 2016, the Texas City Police Department Crime Suppression Unit was investigating appellant and Saenz in connection with the sale of narcotics. During the investigation, Saenz sold methamphetamine to a confidential police informant at the Texas City townhome. The police concluded that Saenz and appellant were "responsible for the selling of narcotics" and obtained a search warrant for the townhome; appellant and Saenz were the "targets" of the warrant. The Crime Suppression Unit executed the search warrant on May 18, 2016.

Corporals Allen Bjerke and Richard Valdivia participated in the warrant's execution and testified at appellant's trial. Corporal Bjerke testified that the police arrived at the townhome, "knock[ed] loudly" on the front door, and "announce[d] police search warrant." Corporal Bjerke stated that, in these situations, the "main focus is to make sure everybody inside the house knows that we are the police and allow them an opportunity to open the door so we don't have to damage any property." No one answered the front door and the officers broke through the door with a ram.

Corporal Bjerke testified that appellant was in the living room when the officers proceeded through the front door; a floor plan of the townhome shows that the front door opened directly into the living room. Corporal Bjerke agreed that appellant "was within ear view area to hear the knock and the statements" made before the officers broke through the door. Appellant was instructed to get on the ground while the officers searched the rest of the townhome. Appellant's 12-year old daughter was found in the kitchen and the officers located Saenz in a bedroom upstairs. Corporal Bjerke testified that Saenz was "[v]ery argumentative" when she

encountered the officers. In contrast, Corporal Bjerke testified that appellant "did not give [the officers] any problems." Appellant's mother was not in the townhome when the warrant was executed.

Corporal Valdivia testified regarding the officers' search of the townhome. Corporal Valdivia's testimony also addressed photographs taken during the search, which were admitted as exhibits at trial.

According to Corporal Valdivia, while the officers were searching an unlocked outdoor storage closet accessed from the back patio, they found a "small disco ball." A photograph of the disco ball shows that, when it was opened, the disco ball contained individually-wrapped "small bundles" of white crystals and an electronic weight scale. Corporal Valdivia searched a small chest of drawers also located inside the storage closet. The first drawer contained a glass pipe, a small tray with white crystals that Corporal Valdivia "believed to be methamphetamine," and a prescription pill bottle with appellant's mother's name on it. The second drawer contained a second electronic weight scale. A third scale was found in the townhome near a purse and a set of men's hair clippers.

A photograph of the storage closet shows a set of plastic baggies hanging on the side wall. The plastic baggies were not concealed and were visible from the doorway of the storage closet. Corporal Valdivia testified that plastic baggies are what the police "normally find for the intent to deliver," and the "small baggies . . . [are] easy to conceal, easy to pass."

Hanging on the back wall of the storage closet were several men's shirts with the name "Cocky" on them. Officer Valdivia testified that appellant's nickname was "Cocky." A citation from the Texas City Police Department was thumbtacked to a wall in the storage closet. The citation was signed by appellant and dated "May 17, 2016" — the day before the officers executed the search warrant at the townhome.

3

A separate piece of paper thumbtacked to the wall listed the telephone number for "Diamond." According to Corporal Bjerke, "Diamond" was Saenz's "street name."

After the officers concluded their search of the townhome, appellant and Saenz were arrested.

Rachel Aubel, a forensic scientist at the Texas Department of Public Safety Crime Laboratory, testified regarding the analysis performed on the white crystal substance recovered from the disco ball found in the storage closet. Aubel determined that the substance was methamphetamine.

Appellant was indicted for the felony offense of possession of a controlled substance with intent to deliver and proceeded to a jury trial. *See* Tex. Health & Safety Code Ann. §§ 481.102, 481.112(a), (c). After both sides rested, the jury was instructed in relevant part as follows.

> The Defendant, MARVIN RAY AUGUST, stands charged by indictment with the offense of possession of a controlled substance with intent to deliver, namely, methamphetamine in an amount of one gram or more but less than four grams. The Defendant has pleaded not guilty.
>
> A person commits the offense stated above if the person knowingly possesses, with intent to deliver, a controlled substance.
>
> A person commits the offense of possession of a controlled substance if the person intentionally or knowingly possesses a controlled substance.
>
> Methamphetamine is a controlled substance.
>
> "Delivery" means the actual or constructive transfer from one person to another of a controlled substance, whether or not there is an agency relationship.
>
> "Possession" means actual care, custody, control, or management.
>
> A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist; A person acts knowingly, or with knowledge, with respect to [a] result of

4

his conduct when he is aware that his conduct is reasonably certain to cause the result.

A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

The jury also was instructed regarding criminal liability for an offense committed by the conduct of another. After its deliberations, the jury returned a verdict finding appellant guilty of possession of a controlled substance, methamphetamine, with intent to deliver, in an amount of one gram or more but less than four grams.

Appellant stipulated to two enhancement felony convictions and the jury sentenced appellant to 50 years' confinement. The trial court signed a "Judgment of Conviction by Jury" on November 3, 2016; the judgment ordered appellant to pay $3,031.67 as reimbursement for court-appointed attorney fees. Appellant timely appealed.

## STANDARD OF REVIEW

The legal sufficiency standard of review is the only standard applied to determine whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). For this review, we consider the combined and cumulative force of all admitted evidence and any reasonable inferences therefrom in the light most favorable to the verdict to determine whether the jury was rationally justified in its decision. *Johnson v. State*, 509 S.W.3d 320, 322 (Tex. Crim. App. 2017).

The jury is the sole judge of credibility and the weight to be attached to witnesses' testimony. *Temple*, 390 S.W.3d at 360. We may not substitute our judgment for that of the jury and must defer to the jury's responsibility to fairly resolve or reconcile conflicts in the evidence. *Isassi v. State*, 330 S.W.3d 633, 638

5

(Tex. Crim. App. 2010).

**ANALYSIS**

Appellant asserts three issues on appeal. Appellant's first two issues challenge the jury's "guilty" finding and contend that there is no legally sufficient evidence to support appellant's conviction as either a principal or as a party to the charged offense. Appellant's third issue asserts that the evidence is insufficient to support the trial court's order that appellant repay his court-appointed attorney fees.

We address these issues in turn.

I.      **Sufficiency of the Evidence**

     A.      **Principal Actor Liability**

Appellant's first issue asserts that the evidence is legally insufficient to support his conviction for possession of controlled substance.[1]

To prove unlawful possession of a controlled substance, the State must establish that the accused (1) exercised care, control, or management over the contraband, and (2) knew the substance was contraband. Tex. Health & Safety Code Ann. § 481.002(38) (Vernon 2017); *Haggerty v. State*, 429 S.W.3d 1, 5 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). The jury instructions incorporated these standards.

Possession may be shown through direct or circumstantial evidence, although the evidence must establish that the accused's connection with the substance was more than fortuitous. *Poindexter v. State*, 153 S.W.3d 402, 405-06 (Tex. Crim. App. 2005), *overruled in part on other grounds by Robinson v. State*, 466 S.W.3d 177, 173 & n.32 (Tex. Crim. App. 2015); *see also Roberts v. State*, 321 S.W.3d 545, 549

---

[1] Appellant does not challenge the sufficiency of the evidence to support a finding of intent to deliver.

(Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).

When the accused is not in exclusive possession of the location where the controlled substance was found, the State must "affirmatively link" the accused to the controlled substance. *Poindexter*, 153 S.W.3d at 406; *see also Jackson v. State*, 495 S.W.3d 398, 405 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). The accused's presence at the scene where the contraband is recovered is insufficient, by itself, to establish possession. *Roberts*, 321 S.W.3d at 549. "However, presence or proximity combined with other direct or circumstantial evidence (e.g., 'links') may be sufficient to establish the elements of possession beyond a reasonable doubt." *Id.*

"An affirmative link generates a reasonable inference that the accused knew of the contraband's existence and exercised control over it." *Haggerty*, 429 S.W.3d at 6. Courts have identified the following factors that may help to show an accused's affirmative links to a controlled substance: (1) the accused's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the accused's proximity and the accessibility of the narcotic; (4) whether the accused was under the influence of narcotics when arrested; (5) whether the accused possessed other contraband or narcotics when arrested; (6) whether the accused made incriminating statements when arrested; (7) whether the accused attempted to flee; (8) whether the accused made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the accused owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the accused was found with a large amount of cash; and (14) whether the conduct of the accused indicated a consciousness of guilt. *Jackson*, 495 S.W.3d at 406 (citing *Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006)). The number of links present is not dispositive; rather, establishing possession depends on "the

7

logical force of all of the evidence, direct and circumstantial." *Evans*, 202 S.W.3d at 162.

The evidence, viewed in the light most favorable to the verdict, is legally sufficient to support the jury's findings that appellant (1) exercised care, control, or management over the methamphetamine found at the townhome, and (2) knew the substance was methamphetamine. In making its guilt-innocence determination, the jury considered the following evidence:

- Appellant resided at the townhome where the methamphetamine was found. Corporal Valdivia, who also worked as a security guard at the townhome complex, testified that appellant lived there with Saenz, his mother, and his 12-year old daughter. Appellant's driver's license listed the townhome as his address.

- Corporal Bjerke testified that, when the officers executed the search warrant, they "knock[ed] loudly" on the front door and "announce[d] police search warrant." Corporal Bjerke agreed that appellant "was within ear view area to hear the knock and the statements." Appellant did not open the door.

- The methamphetamine was found in an outdoor storage closet that included other items belonging to appellant, including shirts with his nickname on them and a recent citation from the Texas City Police Department.

- The police citation was issued to appellant the day before the search warrant was executed, indicating that appellant recently had accessed the storage closet.

- The closet contained items consistent with the sale of drugs, including small plastic baggies hanging on the wall; a glass pipe; and two electronic weight scales. The glass pipe and one scale were located in a chest of drawers, and the plastic baggies were hanging on the wall.

- A third electronic weight scale was recovered during a search of the townhome.

8

This evidence supports several "affirmative links" and generates a reasonable inference that appellant knew of the methamphetamine's existence and exercised control over it.

First, appellant had a "right to possess" the townhome where the search warrant was executed. Witness testimony and evidence show that appellant lived at the townhome with Saenz, his mother, and his 12-year old daughter. *See Burrell v. State*, 445 S.W.3d 761, 765 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (evidence showing that appellant lived in shared apartment where contraband was found "affirmatively linked" appellant to the contraband).

Second, the location where the methamphetamine was found — an unlocked outdoor storage closet — would have been accessible by appellant. Moreover, the methamphetamine was found in a storage closet that also contained shirts with appellant's nickname on them and a recent citation signed by appellant, suggesting that appellant indeed accessed the storage closet. *See Figueroa v. State*, 250 S.W.3d 490, 502-03 (Tex. App.—Austin 2008, pet. ref'd) (affirmative link connecting appellant to contraband where "the cocaine was found in a bedroom that also contained appellant's personal belongings"). The citation was dated "May 17, 2016" — the day before the officers executed the search warrant at the townhome, suggesting that appellant recently had accessed the storage closet.

Third, the evidence shows that other drug paraphernalia was found at the townhome. The officers found an electronic weight scale and a glass pipe in a chest of drawers in the outdoor storage closet, and another scale was located in the townhome. Hanging on a wall inside the storage closet were small plastic baggies; Corporal Valdivia testified that plastic baggies are commonly used in narcotics transactions. *See Torres v. State*, 466 S.W.3d 329, 333 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (drug paraphernalia found in home included plastic baggies and

scales).

Finally, appellant did not answer the front door although, as Corporal Bjerke testified, the officers "knock[ed] loudly" on the front door and "announce[d] police search warrant." Corporal Bjerke testified that appellant "was within ear view area to hear the knock and the statements." This behavior can be construed as consistent with consciousness of guilt. *See Cox v. State*, No. 14-08-01053-CR, 2010 WL 738689, at *5 (Tex. App.—Houston [14th Dist.] March 4, 2010, no pet.) (mem. op., not designated for publication) (evidence supported jury's finding that appellant possessed cocaine where "appellant did not immediately respond to the officers' knocking on the door, and only opened the door after a long delay").

The cumulative force of this evidence is legally sufficient to support appellant's conviction for possession of a controlled substance.

Appellant asserts that he was convicted because "his girlfriend, Brandy Saenz, sold methamphetamine from Appellant's mother's apartment" and that "[t]here is no evidence in the record that Appellant possessed methamphetamine." But evidence linking Saenz to the methamphetamine does not discount the evidence supporting the jury's findings that appellant knew of the contraband's existence and exercised control over it. *See Avila v. State*, 15 S.W.3d 568, 574 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (to support a conviction for possession of a controlled substance, "control over the contraband need not be exclusive, but can be jointly exercised by more than one person").

Appellant also emphasizes the absence of numerous "affirmative links" and asserts that this lack of evidence weighs against the jury's verdict. However, "the absence of various links does not constitute evidence of innocence to be weighed against the links present." *Flores v. State*, 440 S.W.3d 180, 189 (Tex. App.—Houston [14th Dist.] 2013), *vacated on other grounds*, 427 S.W.3d 399 (Tex. Crim.

10

App. 2014) (per curiam). As discussed above, the evidence is legally sufficient to establish the elements of possession beyond a reasonable doubt.

We overrule appellant's first issue challenging the sufficiency of the evidence to support his conviction.

### B. Party Liability

Appellant's second issue asserts that the trial court erred by instructing the jury to consider whether appellant was guilty of the charged offense under a theory of party liability. Appellant contends that "[t]he inclusion of this instruction in the court's charge harmed Appellant."

As discussed above, the evidence is legally sufficient to support appellant's conviction as the principal actor. Where "the evidence clearly supports a defendant's guilt as a principal actor, any error of the trial court in charging on the law of parties is harmless." *Ladd v. State*, 3 S.W.3d 547, 564-65 (Tex. Crim. App. 1999) (internal quotation omitted); *see also Washington v. State*, 417 S.W.3d 713, 723 n.7 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) ("Because there is sufficient evidence of guilt as a principal, we need not address guilty as a party.").

We overrule appellant's second issue challenging the trial court's inclusion of a party liability instruction.

## II. Court-Appointed Attorney Fees

Appellant's third issue asserts that "[t]he evidence is insufficient to support the trial court's order that Appellant reimburse Galveston County for the fees of the attorney appointed to him because of his indigent status." Appellant requests that we reform the trial court's judgment and bill of costs to remove the assessment of court-appointed attorney fees. The State agrees with appellant's third issue and requested relief.

Indigent criminal defendants may request the assistance of a court-appointed attorney. *See* Tex. Code Crim. Proc. Ann. Art. 26.04(a) (Vernon Supp. 2017). "A defendant who is determined by the court to be indigent is presumed to remain indigent for the remainder of the proceedings in the case unless a material change in the defendant's financial circumstances occurs." *Id*. Art. 26.04(p) (Vernon Supp. 2017). The trial court may order a defendant to repay his court-appointed attorney fees if "the judge determines that a defendant has financial resources that enable the defendant to offset in part or in whole the costs of the legal services provided . . . ." *Id*. Art. 26.05(g) (Vernon Supp. 2017).

At the inception of his case, appellant was determined to be indigent under the applicable guidelines and entitled to the appointment of an attorney. After the completion of his trial, appellant completed a second pauper's affidavit and was appointed counsel to represent him on appeal.

The record before us does not contain any determination or finding by the trial court that appellant had any financial resources or was able to pay the attorney fees incurred during trial. Without any evidence to demonstrate appellant's financial resources to offset the cost of legal services, the trial court erred in ordering appellant to reimburse the fees of his court-appointed attorney. *See id*.; *see also West v. State*, 474 S.W.3d 785, 795 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (trial court erred in ordering reimbursement of court-appointed attorney fees where "the record contain[ed] no evidence of appellant's ability to pay for legal representation").

We sustain appellant's third issue.

## CONCLUSION

We overrule appellant's first two issues and conclude that the evidence is legally sufficient to support his conviction for possession of a controlled substance

with intent to deliver.  We sustain appellant's third issue and conclude that the trial court erred in ordering appellant to repay his court-appointed attorney fees.

We modify the trial court's November 3, 2016 "Judgment of Conviction by Jury" to remove the assessment of court-appointed attorney fees, and affirm as so modified.


/s/      William J. Boyce
Justice


Panel consists of Justices Boyce, Jamison, and Brown.
Do Not Publish — Tex. R. App. P. 47.2(b).

13