COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| EDGAR CARDENAS, | § | |
| Appellant, | § | No. 08-18-00083-CR |
| | § | Appeal from the |
| v. | § | 346th District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC#20180D01708) |
| | § | |

## **O P I N I O N**

Appellant Edgar Cardenas ("Cardenas") appeals his murder conviction for which a jury sentenced him to fifty years in prison. We affirm.

## **BACKGROUND**

During the evening of October 30, 2015, Cardenas hung out with a group of peers, including nineteen-year-old twin brothers Luis Fernando ("Fernando") and Luis Francisco Delgado ("Delgado" or "deceased"). Throughout the evening Cardenas argued with Angel Loya ("Loya") and the twins. At one point during the evening, Cardenas drew a knife from his pocket, showed it to Gilbert Saucedo and said he was getting "tired of the twins" and he planned to scare them. Later in the evening after consuming alcohol, marijuana, and cocaine, Cardenas argued with Delgado. According to Griselda Campos ("Campos"), after his argument with Delgado, Cardenas

again pulled out the knife, showed it to Campos and said he was "not messing around."

As the night turned into the early morning hours of October 31, 2015, Cardenas and Delgado agreed to fight in a yard behind a residence owned by Campos' mother-in-law. The others, including Fernando, Campos, and Loya watched as the two fought. When the fight began, Delgado grabbed Cardenas by his feet and caused him to fall to the ground. While Cardenas was on the floor Fernando kicked Cardenas. At one point, a dog, described as a pit bull attempted to intervene in the fight. However, according to Loya, he pulled the dog away before it could cause injury.

Meanwhile, Loya's mother, Rebecca Zamora, who lived across the street, was awakened by a neighbor who reported a fight was occurring. Zamora ran to the location of the fight and yelled to the men to stop fighting and warned them that she was going to call the police. According to Zamora, the fight ended when Delgado stated, in Spanish, "No more, no more, no more, no more." As he spoke, Delgado was "folded over grabbing his stomach." Loya assisted Delgado into a nearby mobile home in which the twins were staying. Loya later called for an ambulance.

An ambulance arrived at 1:42 a.m. Daniel Antonio Sanchez, an advanced medical technician, helped transport Delgado to the hospital. Sanchez located two stab wounds in Delgado's abdomen, and one stab wound in his forearm. While administering aid, Sanchez noticed one of the stab wounds in Delgado's abdomen was so deep his intestines protruded through the wound. Delgado was pronounced dead at the hospital at 3:06 a.m. Delgado's hospital records indicated his liver was lacerated and his right kidney was seriously injured. An autopsy revealed additional "sharp force injuries" to Delgado's left forearm, left wrist, chest, and abdomen. The medical examiner testified there were at least six "inside wounds" which differentiated from the stab wounds in that they traveled longer along the surface of the skin but were not as deep as the

stab wounds to the abdomen. One stab wound to the abdomen was three inches deep, travelled upwards, front to back, left to right and was the cause of Delgado's death.

Shortly after the fight ended between Cardenas and Delgado, Karina Garcia went inside the residence along with Cardenas and two others. Garcia saw Cardenas holding a knife, but the blade was not exposed. Cardenas showed the group his thumb, which he said was broken, and told the group he stabbed Delgado. Garcia did not believe him, however, because she saw no blood on him. Garcia told Cardenas to put the knife away, which he did by placing it in his right pocket. Cardenas then left the residence along with Christian Poor, Garcia, and Campos in Poor's Tahoe, which Poor drove. While traveling in the Tahoe, Campos asked Cardenas what he did to Delgado, to which Cardenas replied, "it was just a little cut . . . nothing was going to happen to [Delgado]." Cardenas pointed to his abdomen to show Campos where he "cut" Delgado. According to Campos, Cardenas told her he "cut" Delgado because he was afraid of being attacked by the dog. Campos then asked Cardenas what he did with the knife. Cardenas did not respond.

Later in the day, Cardenas was arrested and transported to the police station. At approximately 10:00 a.m. on October 31, 2015, after waiving his *Miranda* rights, Cardenas agreed to participate in a video-recorded interview. During the twenty-seven-minute interview, which was played at trial, Cardenas admitted to carrying a knife in his pocket during the hours preceding Delgado's death. He explained he found the knife days earlier. He described the knife as having a black handle and a black blade that opened "straight up" by the press of a button. Cardenas also admitted to physically fighting Delgado, but claimed Delgado provoked him.

Although Cardenas remembered a dog attempted to bite him during the fight, he initially claimed he could not remember what happened after the dog's attempted intervention. Later in the

3

interview, however, when a detective asked Cardenas whether he was more afraid of Delgado or the dog, Cardenas said, "when I pulled out the knife, the dog was gonna try to bite me." He said he did not fear for his life during the fight. When the detectives asked Cardenas why he pulled out his knife during the fight, Cardenas said, "I think it was for the dog because I saw the dog was gonna try to bit [sic] my leg." Cardenas explained that as the dog approached, he stood up and "went like that" only once. Cardenas demonstrated to the detectives how he used the knife by cupping his right hand and sweeping his extended right arm in an upward motion. He said Delgado was standing next to the dog. He also claimed he did not know what happened to the knife after the fight.

When asked what he was thinking after the fight, Cardenas said he knew he "did wrong." Cardenas said he remembered that after the fight, Fernando accused him of stabbing Delgado which prompted Cardenas to leave the residence because he was afraid of Fernando. Cardenas admitted he told his family he got into a fight and that he thought he stabbed someone. During the interview Cardenas wore a cast on his left hand and explained he had obtained medical treatment. He thought he broke his thumb during the fight, but had no other visible injuries. According to his medical records Cardenas was diagnosed with a dislocated left thumb and a closed head injury "without loss of consciousness" and a facial contusion, which were all attributed to a "[f]all down stairs."

**DISCUSSION**

In four issues, Cardenas contends: (1) the evidence was legally insufficient to support one of three alternate murder allegations of which Cardenas was charged by indictment; (2) the jury charge erroneously omitted an instruction on aggravated assault by threat with a deadly weapon;

4

(3) the jury charge failed to limit the elements of the culpable mental state definitions of "intentionally" and "knowingly" to the result of conduct element; and (4) the jury charge erroneously shifted the burden of proof on self-defense from the State to Appellant.

## I.        Legal Insufficiency of the Evidence

In his first issue, Cardenas contends no evidence supported the felony-murder allegation submitted to the jury under Section 19.02(b)(3) of the Texas Penal Code.

### A.        Procedural Background

Cardenas was charged by indictment with one count of murder. In three paragraphs, the indictment alleged Cardenas committed murder by at least one of three alternate means, including: (1) intentional murder; (2) committing an act clearly dangerous to human life with intent to cause serious bodily injury; and (3) felony murder. *See* TEX.PENAL CODE ANN. §§ 19.02 (b)(1), (b)(2), and (b)(3). Specifically, the indictment alleged in relevant part as follows:

Paragraph A

[Edgar Cardenas] did then and there intentionally or knowingly cause the death of an individual, namely, LUIS FRANCISCO DELGADO, by stabbing [him] about the body with a knife,

Paragraph B

[Edgar Cardenas] did then and there, with intent to cause serious bodily injury to an individual, namely, LUIS FRANCISCO DELGADO, commit an act clearly dangerous to human life that caused the death of said LUIS FRANCISCO DELGADO, to wit: stabbing [him] about the body with a knife,

Paragraph C

[Edgar Cardenas] [d]id then and there intentionally or knowingly commit or attempt to commit a felony, to wit: aggravated assault with a deadly weapon by threat, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he committed or attempted to commit an act clearly dangerous to human life, to wit: stabbing LUIS FRANCISCO DELGADO

5

about the body with a knife, that caused the death of LUIS FRANCISCO DELGADO . . . .

Each paragraph in the indictment tracked the statutory language contained in subsections of the murder statute. *See* TEX.PENAL CODE ANN. § 19.02(b)(1), (b)(2), and (b)(3). The trial court's charge permitted the jury to find Cardenas guilty of murder if it found beyond a reasonable doubt he committed the murder by one of three alternate means as charged in the indictment. The jury returned a general verdict finding that Cardenas was "GUILTY of murder as charged in the indictment."

**B.      Standard of Review**

A legal-sufficiency challenge requires us to review the relevant evidence in the light most favorable to the verdict. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We consider all the evidence that sustains the conviction, whether properly or improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex.Crim.App. 2001). Similarly, we consider all the evidence that sustains the conviction, whether submitted by the prosecution or the defense. *Cook v. State*, 858 S.W.2d 467, 470 (Tex.Crim.App. 1993)(en banc); *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App. 2000)(en banc). During our review, we do not reevaluate the weight and credibility of the evidence, nor do we substitute our judgment for that of the jury. *King*, 29 S.W.3d at 562. Rather, we act only to ensure that the jury reached a rational decision. *Muniz v. State*, 851 S.W.2d 238, 246 (Tex.Crim.App. 1993)(en banc).

The legal sufficiency of evidence is measured against the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). "This standard of legal sufficiency ensures that a judgment of acquittal is reserved for those situations in which there is an actual failure in the State's proof of the crime rather than a mere

6

error in the jury charge submitted." *Trevino v. State*, 228 S.W.3d 729, 752–53 (Tex.App.—Corpus Christi 2006, pet. ref'd)(*citing Malik*, 953 S.W.2d at 240). We then determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319.

A person commits murder if he intentionally or knowingly causes the death of an individual. TEX.PENAL CODE ANN. § 19.02(b)(1). A person commits murder if he intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. TEX.PENAL CODE ANN. § 19.02(b)(2). A person commits murder if he commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual. TEX.PENAL CODE ANN. § 19.02(b)(3).

A person acts intentionally with respect to a result of his conduct or nature of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. TEX.PENAL CODE ANN. § 6.03(a). A person acts knowingly with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. TEX.PENAL CODE ANN. § 6.03(b). A person acts knowingly with respect to the nature of his conduct when he is aware of the nature of his conduct. TEX.PENAL CODE ANN. § 6.03(b).

"Intent and knowledge are fact questions for the jury and are almost always proven through evidence of the circumstances surrounding the crime." *Manrique v. State*, 994 S.W.2d 640, 649 (Tex.Crim.App. 1999)(en banc)(Meyers, J., concurring). The jury may infer intent from any facts that tend to prove its existence, including the acts, words, and conduct of the defendant. *Id.* "The

specific intent to kill may be inferred from the use of a deadly weapon, unless in the manner of its use it is reasonably apparent that death or serious bodily injury could not result." *Vuong v. State*, 830 S.W.2d 929, 934 (Tex.Crim.App. 1992). Intent to kill may also be inferred from the nature and extent of the injuries inflicted on the victim. *See Felder v. State*, 848 S.W.2d 85, 90 (Tex.Crim.App. 1992)(intent to kill could be inferred from location and depth of stab wound). A jury may also infer knowledge from such evidence. *Manrique*, 994 S.W.2d at 649.

### C. Analysis

Cardenas contends no evidence supported the felony-murder allegation submitted under Section 19.02(b)(3) because no evidence supported the underlying felony of aggravated assault with a deadly weapon by *threat*. The State does not dispute Cardenas' contention. Instead, the State argues as long as sufficient evidence supports one of the other two alternate means alleged in the indictment, Cardenas' insufficiency claim fails. *See Kitchens v. State*, 823 S.W.2d 256, 258 (Tex.Crim.App. 1991)(in a capital murder case, "the State need prove only one of the underlying offenses charged in the indictment in order to support the conviction[.]").

In his reply brief, Cardenas argues *Kitchens* is distinguishable because it addressed only a jury unanimity claim, which according to Cardenas is not his complaint. However, contrary to Cardenas' assertion, in *addition* to addressing a jury unanimity claim in *Kitchens*, the Texas Court of Criminal Appeals also addressed an insufficiency-of-evidence claim similar to the claim Cardenas raises here. *See Kitchens,* 823 S.W.2d at 259 (in appeal in which appellant was charged with capital murder under alternate theories, "appellant alleges that the evidence is insufficient to prove murder in the course of aggravated sexual assault as alleged in the indictment").

When reviewing the insufficiency-of-evidence claim, the Court in *Kitchens* emphasized

the fact that the appellant had not challenged the sufficiency of the evidence supporting his conviction under an alternative theory of guilt, and observed, "it is settled that 'when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive . . . the verdict stands if the evidence is sufficient with respect to any of the acts charged.'" *Kitchens*, 823 S.W.2d at 259 (quoting *Turner v. United States*, 396 U.S. 398, 420 (1970)). The Court then overruled the insufficiency claim "[b]ecause appellant does not contest the sufficiency of the evidence to prove [the alternate capital murder allegation]." *Id.*

After *Kitchens*, the Court, in other contexts, has reiterated the rule that in homicide offenses, "different legal theories involving the same victim are simply alternate methods of committing the same offense . . . whether they are found in the same or different [statutory] subsections, so long as the same victim is alleged for the predicate murder[.]" *Gamboa v. State*, 296 S.W.3d 574, 583-84 (Tex.Crim.App. 2009). And "when a general verdict is returned and the evidence is sufficient to support a finding under any of the paragraphs submitted, the verdict will be applied to the paragraph finding support in the facts." *Manrique*, 994 S.W.2d at 642 (*citing Aguirre v. State*, 732 S.W.2d 320 (Tex.Crim.App. 1987)). Here, Cardenas does not challenge the legal sufficiency of the evidence supporting his conviction under the alternative theories alleged in the indictment. And we conclude the evidence was legally sufficient to support Cardenas' conviction under either of the alternate theories.

Our conclusion is based on the evidence set forth in the background section above, including the summary of facts we highlight here. First, Cardenas admitted several times in the presence of several individuals he used a deadly weapon, i.e, a knife, to stab the deceased. Second, during the evening before the stabbing, on at least two occasions, Cardenas expressed a desire to

9

use the knife to address his conflict with the deceased indicating premeditation. Third, the location, severity and depth of the fatal stab wound suggested Cardenas intended to inflict a deadly blow or to cause serious bodily injury. Fourth, contrary to Cardenas' assertion that he used the knife to injure the deceased only once, the physical evidence established Delgado suffered multiple injuries from the knife. Fifth, after the stabbing, Cardenas left the scene prior to the arrival of police or the ambulance, disposed of the knife, and lied to medical personnel about how he sustained his own injury and to the police about how the fight transpired. From this evidence a jury could reasonably infer an intent to kill or that he committed an act clearly dangerous to human life with intent to cause serious bodily injury.

In sum, because Cardenas does not challenge the legal sufficiency of the evidence proving he caused Delgado's death by intentionally doing so, or by committing an act clearly dangerous to human life with intent to cause serious bodily injury, and we find there was sufficient evidence to support his conviction under either of these theories, his legal insufficiency claim fails. We overrule Cardenas' first issue.

## II. Unobjected-to-Jury-Charge Error

In Issues Two, Three, and Four, Cardenas contends the jury charge was defective in the following three respects: (1) the charge omitted an instruction on the elements of aggravated assault with a deadly weapon by threat; (2) the culpable mental state definitions of "intentionally" and "knowingly" were not limited to the result-of-conduct element; and (3) the instruction on self-defense allegedly shifted the burden of proof from the State to Appellant.

### A. Standard of Review

Cardenas raised no objections to the court's charge at trial. Under such circumstances, our

first duty is to decide whether jury-charge error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex.Crim.App. 2005). And if we find error, we can only *reverse* on the basis of unobjected-to charge error if we find the error is so "egregious" and created such harm that the appellant "has not had a fair and impartial trial." *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1985)(en banc)(op. on reh'g); *Vega v. State*, 394 S.W.3d 514, 521 (Tex.Crim.App. 2013).

### B.      Jury-Charge Error Analysis

### 1.      Failure to Instruct the Jury in the Abstract Portion of the Charge on Underlying Felony in Felony Murder Allegation.

In Issue Two, Cardenas contends the trial court erred by failing to include in the abstract portion of the charge the elements of aggravated assault with a deadly weapon by threat, *see* TEX.PENAL CODE ANN. §§ 22.02(a)(2) and 22.01(a)(2), when the application paragraph on felony murder instructed the jury it could convict under the following conditions:

> If you find from the evidence beyond a reasonable doubt that on or about the 31st day of October, 2015 in El Paso County, Texas the Defendant, EDGAR CARDENAS, did then and there, intentionally or knowingly commit or attempt to commit a felony, to wit: *aggravated assault with a deadly weapon by threat*, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he committed or attempted to commit an act clearly dangerous to human life, to wit: stabbing LUIS FRANCISCO DELGADO about the body with a knife, that caused the death of LUIS FRANCISCO DELGADO; and the said defendant used and exhibited a deadly weapon, to wit: a knife during the commission of or immediate flight from said offense then you will find the Defendant GUILTY OF Murder as charged in the Indictment. [Emphasis added].

The State does not dispute the trial court wholly failed to instruct on the elements of aggravated assault by threat and it concedes this omission was error, but argues the error did not result in egregious harm to Cardenas. Accordingly, we assume without deciding the trial court erred in failing to charge the jury on aggravated assault with a deadly weapon by threat in the abstract

11

portion of the trial court's charge.

### 2. Failure to Limit "Intentionally" and "Knowingly" Definitions to Result-of-Conduct Element

In Issue Three, Cardenas contends the trial court erred when it failed to limit the conduct element in its definitions of "intentionally" and "knowingly" to only "result of conduct." *See Price v. State*, 457 S.W.3d 437, 441 (Tex.Crim.App. 2015)("A trial court errs when it fails to limit the language in regard to the applicable culpable mental states to the appropriate conduct element."); *Cook v. State*, 884 S.W.2d 485, 491 (Tex.Crim.App. 1994).

Section 6.03 of the Texas Penal Code delineates three "conduct elements" which may be involved in an offense: (1) the nature of the conduct; (2) the result of the conduct; and (3) the circumstances surrounding the conduct. *McQueen v. State*, 781 S.W.2d 600, 603 (Tex.Crim.App. 1989). Specifically, "intentionally" and "knowingly" are defined by Section 6.03 as follows:

> (a) A person acts intentionally, or with intent, with respect to the *nature of his conduct or* to a *result of his conduct* when it is his conscious objective or desire to engage in the conduct or cause the result.
>
> (b) A person acts knowingly, or with knowledge, with respect to the *nature of his conduct* or to *circumstances surrounding his conduct* when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a *result of his conduct* when he is aware that his conduct is reasonably certain to cause the result. [Emphasis added].

TEX.PENAL CODE ANN. § 6.03(a)-(b).

The jury charge in this case defined "intentionally" and "knowingly" in the abstract portion of the charge as follows:

> A person acts **intentionally**, or with **intent**, with respect to the *nature of his conduct* or to the *result of his conduct* when it is his conscious objective or desire to engage in the conduct or cause the result.
>
> A person acts **knowingly**, or with **knowledge**, with respect to the *nature of his*

*conduct* or *to circumstances surrounding his conduct* when he is aware of the nature of his conduct or that the circumstances exist. [Emphasis added].

Thus, the jury charge's definition of "intentionally" contained the result of conduct element, but it also included reference to the nature of conduct element. The "knowingly" definition, however, omitted entirely the result of conduct element and contained only the elements applicable to *nature* of conduct and superfluous language related to *circumstances surrounding* conduct offenses.

The State concedes the definitions of "intentionally" and "knowingly" applicable to both intentional murder and committing an act clearly dangerous to human life with intent to cause serious bodily injury should have focused only on the *result* of Cardenas' conduct. *See Cook v. State,* 884 S.W.2d at 491 ("Intentional murder . . . is a 'result of conduct' offense, therefore, the trial judge erred in not limiting the culpable mental states to the result of appellant's conduct."); *see also Lugo-Lugo v. State*, 650 S.W.2d 72, 81 (Tex.Crim.App. 1983)("We also note that murder under Section 19.02(b)(2) . . . is a 'result' type of a crime."). However, the State also contends the trial court correctly included the nature of conduct element in both definitions because the *mens-rea* applicable to the felony-murder allegation was controlled by the underlying felony which, in this case, was aggravated assault by threat, which is a nature of conduct offense. *Lomax v. State*, 233 S.W.3d 302 (Tex.Crim.App. 2007). We agree.

In *Lomax*, the Texas Court of Criminal Appeals expressly observed that the felony-murder statute itself "plainly dispenses with a culpable mental state," *Lomax,* 233 S.W.3d at 305, and overruled prior precedent which held "a culpable mental state is required for 'the act of murder' in a felony-murder prosecution and that the mental state of the underlying felony supplies this culpable mental state." *Id.* at 307 (*overruling Rodriguez v. State*, 548 S.W.2d 26, 28-29 (Tex.Crim.App. 1977)). It did so because the appellant there argued that strict liability offenses,

like DWI, which omit proof of a culpable mental state, could not operate as the predicate felony in a felony-murder prosecution in light of the holding in *Rodriguez*.

The Court disagreed with Lomax's argument and explained the Legislature's decision to dispense with a culpable mental state in the felony-murder statute was "consistent with the historical purpose of the felony-murder rule, the very essence of which is to make a person guilty of an 'unintentional' murder when he causes another person's death during the commission of some type of a felony." *Id*. at 305. The Court held as long as the underlying offense was not "manslaughter" any felony offense will do, even if it lacked a *mens-rea* element. Accordingly, whether a felony-murder allegation requires proof of a culpable mental state depends on whether the elements of the underlying felony include one. And, if the elements of the underlying felony include a culpable mental state, the relevant element for purposes of the Section 6.03 definitions is the one applicable to the *mens-rea* element in the underlying felony, if any. Here, the underlying felony in the felony-murder allegation was aggravated assault by *threat*, which contains a *mens rea* element focused on the *nature* of the accused's conduct. *See Garfias v. State*, 424 S.W.3d 54, 60 (Tex.Crim.App. 2014)("[a]s we have noted in the past, an assaultive offense by *threat* is a conduct-oriented offense")(*citing Landrian v. State*, 268 S.W.3d 532, 540 (Tex.Crim.App. 2008)[Emphasis added].

While we agree with the State the court's charge correctly included the nature of conduct element in the definitions of "intentionally" and "knowingly," the State does not address the other errors in the "knowingly" definition, namely, the inclusion of the third conduct element, *circumstances surrounding* the conduct, and the omission of the result of conduct element. Therefore, we find the jury was erroneously charged on the definition of "knowingly" for these

14

reasons. *See Patrick v. State*, 906 S.W.2d 481, 491 (Tex.Crim.App. 1995)(observing that under reasoning in *Cook*, it would be error when defining culpable mental state definitions to include all three conduct elements when only two were applicable).

### 3.      Self-Defense Instruction

In Issue Four, Cardenas alleges the trial court shifted the burden of proof from the State to the defendant when it instructed the jury on self-defense. The jury was instructed on self-defense as follows:

> If you all agree that the state has proved, beyond a reasonable doubt, each of the elements, you must next consider whether the defendant's use of force was made in self-defense.
>
> You have heard evidence that, when the defendant, Edgar Cardenas, stabbed Luis Francisco Delgado about the body with the knife, he believed his use of deadly force was necessary to defend himself against Luis Francisco Delgado's use of unlawful deadly force. A person's use of deadly force against another that would otherwise constitute the crime of murder is not a criminal offense if the person reasonably believed the force used was immediately necessary to protect the person against the other's use or attempted use of unlawful deadly force.
>
> Self-defense does not cover conduct in response to verbal provocation alone. The defendant must have reasonably believed the other had done more than verbally provoke the defendant. The defendant is not required to prove self-defense. Rather the state must prove beyond a reasonable doubt that self-defense does not apply to the defendant's conduct.
>
> The Defendant's belief that the use of deadly force was immediately necessary is presumed to be reasonable if the Defendant: knew or had reason to believe that person against whom deadly force was used was committing or attempting to use deadly force and did not provoke the person or persons against whom the deadly force was used; and was not otherwise engaged in criminal activity, other than a Class C misdemeanor that is a violation of law or ordinance regulating traffic at the time the force was used.
>
> Therefore, if you find beyond a reasonable doubt that the defendant, EDGAR CARDENAS, did then and there intentionally or knowingly cause the death of LUIS FRANCISCO DELGADO, but you further find, or have a reasonable doubt thereof, that EDGAR CARDENAS was justified in using deadly force against

15

LUIS FRANCISCO DELGADO when and to the degree he reasonably believed the force was immediately necessary to protect himself against LUIS FRANCISCO DELGADO'S use or attempted use of unlawful deadly force, you will find the defendant NOT GUILTY. (VERDICT FORM A-2).

If you do not so find, or have a reasonable doubt thereof, you will next consider whether the defendant is guilty of the lesser-included offense of Manslaughter.

Cardenas takes issue with the last sentence in the court's charge on self-defense which instructed, "If you do not so find, or have a reasonable doubt thereof, you will next consider whether the defendant is guilty of the lesser-included offense of Manslaughter" because it allegedly "appears to tell the jurors that if they have a reasonable doubt that Appellant acted in self-defense, they should reject that proposition."

In support of his argument, Cardenas cites to a single case, *Alonzo v. State*, 353 S.W.3d 778, 781 (Tex.Crim.App. 2011), for the general proposition that when charging on self-defense, the trial court should instruct the jury to acquit the defendant if "the State ha[s] not disproved self-defense beyond a reasonable doubt." *Id.* Cardenas concedes, as he must, that the court's charge expressly instructed the jury that the "defendant is not required to prove self-defense" and that the "the state must prove beyond a reasonable doubt that self-defense does not apply to the defendant's conduct." Moreover, the court's self-defense charge clearly instructed the jury that if it believed Cardenas "was justified in using deadly force . . . when and to the degree he reasonably believed the force was immediately necessary to protect himself . . . you will find the defendant NOT GUILTY." While the additional language about which Cardenas complains was not a model of clarity, we find it did not shift the burden of proof from the State to appellant to demonstrate beyond a reasonable doubt that his use of deadly force was justified. Accordingly, we find no error in this regard. We overrule Issue Four.

16

### C. Egregious Harm Analysis

Having found error in the charge as to Issues Two and Three, and in light of Cardenas' failure to object to the error in the charge, we turn to the question of whether the record establishes Cardenas suffered egregious harm as a result of these trial court errors. Egregious harm resulting from unobjected-to charge error exists if the error goes to the very basis of the case, deprives the accused of a valuable right, vitally affects his defensive theory, and thereby effectively denies the accused a fair and impartial trial. *Almanza,* 686 S.W.2d at 172. In examining the record for egregious harm, we consider: (1) the entire jury charge; (2) the state of the evidence; (3) the closing arguments of the parties; and (4) any other relevant information in the record. *Arteaga v. State*, 521 S.W.3d 329, 338 (Tex.Crim.App. 2017).

#### (1) Failure to charge on underlying felony in felony murder in abstract portion of charge

In this case, we find no egregious harm flowed from the trial court's failure to instruct the jury on the underlying felony, i.e., aggravated assault by threat, when charging the jury in the abstract portion of the charge on felony murder. Our conclusion is based on two reasons. First, in addition to felony murder, the application section of the charge authorized the jury to convict Cardenas if it found beyond a reasonable doubt he committed murder by two other alternate means, intentional murder and by committing an act clearly dangerous to human life with intent to cause serious bodily injury. As we explained above, we find the evidence legally sufficient to support Cardenas' conviction under either of these alternative means. Second, the record shows defense counsel argued in closing there was no evidence tending to show Cardenas' guilt by felony murder, and the prosecutor did not strongly rebut defense counsel's argument with respect to felony murder, opting instead to focus on Cardenas' intent to "murder" and to cause serious bodily injury

17

while committing an act clearly dangerous to human life.

As there was little to no evidence tending to show Cardenas' guilt by felony murder, the jury almost certainly did not rely upon the instruction on felony murder in the application section of the court's charge. Under these circumstances, any error by the trial court when charging on the felony murder allegation in the abstract section of the court's charge is harmless. *See e.g. Washington v. State*, 417 S.W.3d 713, 724 (Tex.Crim.App. 2013)(finding submission of charge on law of parties was harmless because "if there was 'no evidence tending to show appellant's guilt as a party, the jury almost certainly did not rely upon the parties instruction in arriving at its verdict, but rather based the verdict on the evidence tending to show appellant's guilt as a principal actor'"). We overrule Issue Two.

**(2) Failure to correctly define "knowingly" in abstract portion of charge**

The murder theories requiring proof of a "knowingly" culpable mental state were intentional murder brought under Section 19.02(b)(1) and felony murder brought under Section 19.02(b)(3). Since we have already determined the jury almost certainly did not rely on the instruction on felony murder in the application section of the court's charge to convict Cardenas, our egregious harm analysis focuses on the use of "knowingly" with respect to intentional murder under Section 19.02(b)(1).

We first consider whether including the superfluous "circumstances surrounding" conduct element in the knowingly definition resulted in egregious harm. "In assessing harm resulting from the inclusion of improper conduct elements in the definitions of culpable mental states, we 'may consider the degree, if any, to which the culpable mental states were limited by the application portions of the jury charge.'" *Hughes v. State*, 897 S.W.2d 285, 296 (Tex.Crim.App. 1994)(*quoting*

18

*Cook*, 884 S.W.2d at 492, fn. 6). The application paragraph on intentional murder correctly instructed the jury as follows:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 31st day of October, 2015 in El Paso County, Texas the Defendant EDGAR CARDENAS, did then and there intentionally *or knowingly* cause the death of an individual, namely LUIS FRANCISCO DELGADO, by stabbing LUIS FRANCISCO DELGADO about the body with a knife; and the said defendant used and exhibited a deadly weapon, to wit: a knife during the commission of or immediate flight from said offense.

.     .     .

> [T]hen you will find the Defendant GUILTY of Murder as charged in the Indictment. [Emphasis added].

Thus, in the application paragraph both the intentional and knowing elements clearly modified "cause the death," which would have instructed the jury to focus on whether Cardenas intended to cause the death or knew his conduct would cause the death, both of which are result oriented inquiries. Such language when viewed in factual context within the application paragraph is sufficient to establish Cardenas suffered no egregious harm by the inclusion of the superfluous "circumstances surrounding" conduct element in the knowingly definition in the abstract portion of the court's charge. *See Hughes*, 897 S.W.2d at 296-97 (finding no harm, much less egregious harm, from inclusion of superfluous conduct element in *mens rea* definition when application paragraph pointed the jury to appropriate conduct at issue); *Medina v. State*, 7 S.W.3d 633, 640 (Tex.Crim.App. 1999)(en banc)("Where the application paragraph correctly instructs the jury, an error in the abstract instruction is not egregious.").

Next, we consider whether omission of the result of conduct element in the knowingly definition in the abstract portion of the charge amounts to egregious harm in this case. "[W]here the application paragraph of the charge correctly instructs the jury on the law applicable to the

19

case, this mitigates against a finding that any error in the abstract portion of the charge was egregious." *Kuhn v. State*, 393 S.W.3d 519, 529 (Tex.App.—Austin 2013, pet. ref'd). Because we find the application paragraph under Section 19.02(b)(1) correctly instructed the jury to focus on whether Cardenas knew his conduct would result in Delgado's death, we find it was adequate to prevent egregious harm.

In addition, even if Cardenas could somehow show he suffered egregious harm by the submission of an erroneous definition of knowingly in the abstract portion of the court's charge with respect to intentional murder under Section 19.02(b)(1) or felony murder under Section 19.02(b)(3), we find the jury could have found him guilty under the alternate murder theory submitted under Section 19.02(b)(2), which did not reference the erroneous "knowing" definition. With respect to Section 19.02(b)(2), the jury was correctly authorized to convict Cardenas of murder if it found beyond a reasonable doubt that he

> [W]ith *intent to cause serious bodily injury* to an individual, namely, LUIS FRANCISCO DELGADO, commit[ed] an act clearly dangerous to human life that caused the death of the said LUIS FRANCISCO DELGADO, to wit: stabbing LUIS FRANCISCO DELGADO about the body with a knife . . . . [Emphasis added].

Because this application paragraph was correct in that the *mens rea* element of "intent" correctly modified "to cause serious bodily injury," and the "intent" definition in the abstract portion of the charge included the result of conduct element, i.e, "when it is his conscious objective or desire to . . . cause the result," and there was sufficient evidence to support Cardenas' conviction under Section 19.02(b)(2), we find Cardenas did not suffer egregious harm from the erroneous definition of "knowingly" in the abstract portion of the charge that was applicable only to the other theories submitted under Sections 19.02(b)(1) or 19.02(b)(3). *Medina,* 7 S.W.3d at 640 (finding no egregious harm from jury charge error involving erroneous definition of "knowingly" where there

was "at least one theory of the offense upon which appellant's conviction may stand"). We overrule Issue Three.

## CERTIFICATION OF RIGHT TO APPEAL

We note that the trial court has certified Appellant's right to appeal in this case, but the certification does not bear Appellant's signature indicating that he has been informed of his rights to appeal and to file a *pro se* petition for discretionary review with the Texas Court of Criminal Appeals. *See* TEX.R.APP.P. 25.2(d). We thus find that the certification is defective and that neither Appellant's attorney nor the trial court has corrected the defective certification.

To remedy this defect, the Court ORDERS Appellant's attorney, pursuant to Rule 48.4, to send Appellant a copy of this opinion and this Court's judgment, to notify Appellant of his right to file a *pro se* petition for discretionary review, and to inform Appellant of the applicable deadlines. *See* TEX.R.APP.P. 48.4, 68. The Court further ORDERS Appellant's attorney to comply with all the requirements of Rule 48.4. TEX.R.APP.P. 48.4.

## CONCLUSION

For these reasons, we affirm the trial court's judgment.


August 17, 2021

YVONNE T. RODRIGUEZ, Chief Justice

Before Rodriguez, C.J., Palafox, and Alley, JJ.

(Do Not Publish)